Ronald C. Barker, #0208
BARKER LAW OFFICE, LLC
Attorney for Plaintiff Kim Michael Dickson
2870 South State Street
Salt Lake City, Utah 84115-3692
Telephone:     (801) 486-9636
Fax:            (801) 486-5754
Email:          rcb@barkerlawoffice.com

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF UTAH, CENTRAL DIVISION
--oooOooo—

|  |  |  |
|---|---|---|
| | ) | |
| KIM MICHAEL DICKSON | ) | |
| | ) | |
| Plaintiffs, | ) | **COMPLAINT** |
| | | (Jury Demand) |
| vs. | ) | |
| | ) | |
| BLUEHOST INC., a Utah Corporation, | ) | |
| | ) | Case No.: 2:14-cv-00339- DBP |
| | ) | |
| Defendants. | ) | Judge: Dustin B. Pead |
| | ) | |

---oooOooo—

Plaintiff Kim Michael Dickson, by and through his undersigned counsel, hereby complains

and alleges against the Defendant Bluehost Inc., as follows:

## NATURE OF THE CASE

1.  **Employee civil rights** - This action is brought by an American Citizen of Chinese ancestry

under various Civil Rights and related laws described herein,[1] which arises from Defendants' acts and/or omissions, including but not limited to the following:

(a) **Pattern of racial discrimination** - A pattern of pervasive race, color and national origin discrimination, which created a hostile work environment for Plaintiff.

(b) **Underpayment to non-white employees** - A pattern of underpayment of wages to non-whites because of their race or national origin, including underpayment to Plaintiff.

(c) **Hostile workplace** - Plaintiff alleges that the Defendant created, maintained and failed to correct a known discriminatory and hostile work environment for non-white Americans, including Plaintiff.

(d) **Emotional distress** - Plaintiff also alleges that Defendant violated state law by failing to properly supervise their employees and/or agents and by intentionally and/or negligently inflecting emotional distress and other damages upon Plaintiff.

(e) **Relief sought** - Plaintiff seeks all available equitable relief, damages, attorneys' fees, costs, interest, punitive/exemplary damages, declaratory, injunctive and other relief.

## **PARTIES**

2. **Plaintiff** - The Plaintiff Kim Michael Dickson ("**DICKSON**" or "**PLAINTIFF**") is a citizen of the United States residing at 2409 West Butternut Lane, Lehi, Utah 84043, in Utah County, Utah, within the Central Division of the above-entitled Court. At all times relevant Dickson was

---

[1] See Title VII of the Civil rights Act of 1964, as amended, 42 U.S.C § 2000e, *et seq* and 42 U.S.C. § 1981. Also see statutes quoted in ¶ 3, 4 and 5 below.

an"**EMPLOYEE**" within the meaning of Title VII, 42 U.S.C. § 2000e(f), et seq.  Dickson was born

in Reno, Nevada and is of Chinese ancestry..

3.      **Defendant** - The Defendant Bluehost Inc.  ("**BLUEHOST**" or "**DEFENDANT**") is a

corporation organized and existing under the Laws of the State of Utah, Utah Dept. of Commerce

entity #5678861-0142, with its principal place of business at 1958 South 950 East, Provo, Utah

84606, which is in Utah County, Utah within the Central Division of the above-entitled Court.  At

all times relevant Bluehost  was an "**EMPLOYER**" within the meaning of Title VII, 42 U.S.C. §

2000(e)(b), et seq.

## JURISDICTION and VENUE

4.      **Jurisdiction** - This Court has original jurisdiction under the provisions of 28 U.S.C. 1331,

as Dickson's claims arise under federal law.  Plaintiff brings this action pursuant to some or all of

the laws discussed below, including but not limited to the following:

(a)     **Age discrimination** - the Age Discrimination in Employment Act of 1967

("**ADEA**"), as amended, for discrimination in employment on the basis of age and

for retaliation.  Jurisdiction is specifically conferred on this Court by the ADEA and

by 42 U.S.C. § 2000e-5.  Equitable and other relief are also sought under 42 U.S.C.

§ 2000e-5 (g).  Jurisdiction is also based on 28 U.S.C. § 1331, 1332, 1337, 1343,

1367, and 42 U.S.C. § 1981, et. seq.

(b)     **Racial wage discrimination** - Jurisdiction is also based on Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e-5(f) and 28 U.S.C. 1391.  Plaintiff also seeks

injunctive relief; monetary damages, including back pay, front pay, if applicable,

compensatory and punitive damages; and attorneys fees and costs, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq.; the Civil Rights Act of 1 866, as amended, 42 U.S.C. Section 1981; 42 U.S.C. Section 1981A and 42 U.S.C. Section 1988.  Dickson alleges, *inter alia*, that he was required to accept substantially less compensation than white persons similarly situated based in whole or in part upon Bluehost's race policy of paying non-whites about $10,000 less per year than it paid similarly situated white employees, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq., and the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981, et seq.

(c)     **Hostile work environment -** Based on the foregoing and other applicable statutes and laws, this Court has jurisdiction to redress hostile work environment, racial and ethnic slurs, etc.

(d)     **Declaratory judgments** - The Court also has jurisdiction pursuant to 28 U.S.C. Sections 2201 and 2202 relating to declaratory judgments.

(e)     **Ancillary jurisdiction** - This Court may also exercise pendant jurisdiction over Plaintiffs state law claims arising under the common law and statutes of the State of Utah, and which arise from a common nucleus of operative fact pursuant to 28 U.S.C. Section 1367. Mr. Dickson also brings tort and contract claims under the common law of Utah and based on the U.S.  District Court's right to exercise supplemental jurisdiction over related state claims.

5.      **Venue** - Venue is properly set in this Court, in that the causes of action Plaintiff alleges

herein arose and the alleged illegal conduct occurred within the Central Division of the above-

entitled Court pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. § 1391(b), et seq.

## DISCRIMINATION CHARGES

6.      **Timely discrimination charge** - Based on the events described in and giving rise to this

Complaint, Dickson filed a timely charge of discrimination, etc. with the Equal Employment

Opportunity Commission ("**EEOC**"), and has otherwise exhausted his administrative remedies

within the meaning of Title VII and other applicable laws and regulations.  A copy of Dickson's

discrimination charge is attached hereto as **Ex. "A"**.

## RIGHT TO SUE LETTER

7.      **Notice of right to sue** - The EEOC issued to Plaintiff a Right to Sue letter on February 27,

2014.  Plaintiff has filed this Complaint within ninety (90) days as required therein. A copy of the

EEOC right to sue notice is attached hereto as **Ex. "B"**.

## GENERAL FACTUAL ALLEGATIONS

8.      **Dickson's employment dates** - About 8/08/07 Bluehost employed Dickson as a level I

Technical Support Engineer.  About February, 2011 was promoted to a Tech Shift Manager.  Dixon

was discharged as an employee of Bluehost on 10/07/12.

9.      **Dickson's employment with Bluehost** - At all times relevant to the allegations made herein,

Dickson worked for Bluehost as a Tech Shift Manager at the Bluehost facility located at  1958 South

950 East, Provo, Utah 84606.  At the time of the events alleged herein, Dickson had worked for

Bluehost for over 5 years.  Dickson considered himself to be a fully satisfactory employee.  During his employment for Bluehost he had  no major policy violations or disciplinary problems.  In a 2012 meeting with Lewis and Handy, they told Dickson that he was their best manager and that length of service is not considered by Bluehost in determining pay increases.  Mr. Dickson's work for Bluehost was exemplary, he excelled in his rating at his annual performance reviews and he was usually the top Bluehost employee at his level.  At all relevant times, Mr. Dickson fully, adequately and completely performed all of the functions, duties and responsibilities of his employment with Defendant Bluehost's and its claims that Dickson was terminated because of poor work performance is incorrect.

10.    **Identification of Bluehost employees** - The following persons were employed by Bluehost in the management positions or other positions indicated:

   (a)    **Bluehost's Management -** Persons referred to herein who were part of Bluehost's upper management include the following:

       (1)    **Don Handy ("HANDY")** was Bluehost's chief executive officer.

       (2)    **Ben Lewis** ("**LEWIS**") was a member of Bluehost's executive management and its director of customer services.

       (3)    **Neff Sanchez**, Sr. ("**SANCHEZ**") was Dickson's immediate manager.

       (4)    **Kristin Krotosky** ("**KROTOSKY**") was Bluehost's Human resources ("**HR**") manager.

       (5)    **Matt Heaton** ("**HEATON**") was a major owner of Bluehost's parent company, Endurance International Group ("**EIG**").

(6)    **Ron Lasalvia** ("**LASALVIA**") was the chief operating officer of Bluehost's parent company EIG.

(b)    **Bluehost's employees** - Fellow Bluehost employees mentioned herein, most of whom were Bluehost "managers," include:   Richard Jackson ("**JACKSON**"), Mike Stevens ("**STEVENS**"), Van Celaya ("**CELAYA**"), David Estes ("**ESTES**"), Teresa Wohlwend ("**WOHLWEND**") and Charles Stauffer ("**STAUFFER**").

## EVENTS REQUIRING RELIEF
(Hostile work environment - age, racial slurs, etc.)

11.    **Hostile work environment** - Commencing about April,2012 and thereafter Dickson was repeatedly and consistently exposed to an adverse racial, color, age discrimination and racially hostile environment at Bluehost, both in the workplace and during management meetings at which Lewis was present.[2]  For example:

(a)    **Age slurs** - Bluehost management, managers, employees and agents under their control, repeatedly, publicly and openly tormented and ridiculed Plaintiff by calling him a "old guy," an "Old manager" and by using other terms which ridiculed Dickson' age, by telling offensive sexually explicit stories and jokes, including stories about members of Bluehost's employees' families.

(b)    **Racial slurs** - Bluehost management, managers, employees and agents under their control, repeatedly, publicly and openly tormented and ridiculed Plaintiff by calling

---

[2]

Dickson estimates that racial and slurs occurred not less than 6 times for race and about 6 times for age during the years 2010-2012, but said slurs increased in frequency in 2012.

him a "Chinkonese," "old guy," "old manager," etc. and by using other racial and age related slurs toward Plaintiff.

(c) **Upper management was present when racial, age, etc. slurs occurred** - Among other places where such race, age, etc. slurs occurred, said slurs regularly occurred in the weekly manager meetings at which Lewis, a member of upper management, and various other "managers" were present, and they regularly occurred in the workplace.

(d) **Notices to Bluehost management** - The presence of upper Bluehost management when said racial and age slurs occurred, both in said meetings and in the workplace, complaints to upper management, etc., together with Bluehost's failure to take corrective Acton made it apparent that Bluehost condoned said conduct. Persons who generally attended said meetings included Lewis, Wohlwend, Jackson, Steven, Celaya, Estes and others.

12. **Circumstances excused Dickson from filing a complaint about age, race, etc slurs** - Dickson's did not specifically make additional complaints to HR or to upper management about age, race, etc. slurs against him was because Bluehosts' middle management was the subject of Dickson's prior racial complaints concerning employee promotions recommended by Dickson; because they were already aware of said age and racial slurs; because prior experience showed that such complaints would be useless acts; because of Bluehost's hostile work environment; and because of his fear of losing his job if he made additional complaints. Dickson's fear of losing his job was well founded as demonstrated by the fact that he was summarily discharged when he complained

to HR about Lewis discrimination in refusing his recommendations re promoting non-whites. Reasons why Dickson feared losing his job if he complained to HR about slurs include the following:

(a) **Bluehost's pattern of failure to investigate complaints** - Wohlwend, a Caucasian Bluehost employee, informed Dickson that Krotosky failed to take any action concerning her complaint and that Krotosky had not been truthful to her concerning the persons she talked to during her alleged investigation.

(b) **Dickson's prior discrimination complaints** - Dickson had submitted at least 3 complaints to HR about discrimination in the promotion process concerning Asian, Hispanic, Black, mixed race etc., none of which were acted on. Instead whites were given preferential treatment for promotions and Dickson was fired for complaining.

( c) **Bluehost's rejection of Dickson's non-white promotion recommendations** - Dickson had made numerous recommendations of well qualified non-whites to Lewis for promotion but those recommendations were summarily rejected, obviously because of their race. See discussion in ¶ 13, et seq. below.

(d) **Dickson's fear of being fired if he complained about slurs** - Dickson did not believe that Lewis or HR were neutral entities to whom he could complain about racial slurs, discrimination, etc., or that they would fairly evaluate any such claim as racism in an unbiased fashion. He truly was afraid to complain because of his concern of losing his job. Said fear proved to be well founded because he was

summarily discharged when he complained about discrimination in refusal to promote non-whites.

## **ADDITIONAL EVENTS REQUIRING RELIEF**
### (Race Discrimination re Wages)

13.    **Discriminatory pay** - From August 2007 when Dickson was employed until 10/07/12 when his employment was terminated, Bluehost discriminated against Dickson by paying him about $48,000 per year while at the same time paying Stevens, a white person who was doing essentially the same job was being about $58,000 per year.  Said disparate rate of pay was a result of Bluehost's custom and practice of paying its non-white employees about $10,000 less per year than it paid its white employees.

14.    **Dickson's complaint re being paid less than white persons** - Dickson orally complained to Handy and Lewis about being paid less than Stevens was paid. In response Bluehost increased Dickson's compensation to about $55,000 per year, which was still about $3,000 per year less than Bluehost was paying to Stevens, a 30 year old white employee doing essentially the same job, but who was not required to perform additional duties such as those imposed upon Dickson.  When Dickson received his raise he was required to also assume the additional duties of the "Efficiency Strategist" for the entire company, without additional compensation.

15.    **After raise Dickson was still underpaid** - Under the circumstances, Dickson's pay increase was essentially an insufficient discriminatory raise which still left him being paid substantially less was being paid to comparable white employees.

16.    **Bluehost's pretextual discharge -** Bluehost has asserted various pretextual non-

discriminatory reasons for discharging Dickson and several defenses, none of which have merit. One of Bluehost's primary excuses for discharging Dickson was because he had allegedly assisted another start up competitor to Bluehost called HostGator.[3] Based upon disputed claims and without an opportunity to be heard and present evidence, Dickson was summarily terminated while Bluehost's white employees , Tim Hunsaker and Dave Estes, who were actually the persons who were promoting and/or operating HostGator, were not discharged.   This demonstrates another flagrant instance of race discrimination.

17.      **Bluehost's Employee handbook** - Bluehost's defense relies heavily on an employee handbook which was not used and which had generally been abandoned and/or ignored by Bluehost and its employees prior to Dickson's discharge.   Said Handbook and its terms were void and unenforceable under principles of waiver, estoppel, abandonment, etc.   If said terms were enforceable, the were inappropriately applied in a racial discriminatory manner, without due process to Dickson's and to his damage and denial of due process to Dickson.

18.      **Racially hostile work environment for Plaintiff** - By its acts and omissions, including but not limited to those stated herein, Bluehost caused or permitted the a racially hostile work environment for Plaintiff.

19.      **Dickson's damages** - As a direct and proximate result of said racial, age, etc. slurs, Dickson suffered humiliation, embarrassment, hurt feelings, etc. and subjected him to a hostile and unpleasant work environment to the extent that did not want to go to work.   Dickson sustained

---

[3]

As noted in footnote 1, page 11 of Bluehost's attorney's letter, Bluehost's parent company, The Endurance International Group, subsequently acquired HostGator.

damages from Bluehost's acts and omissions as more particularly described herein, in amounts to be proven at trial, but which is expected to include injunctive relief, damages, punitive damages, etc.

## FIRST CLAIM FOR RELIEF

(Race, Color, national origin Discrimination in Violation of Title VII)

20.     Plaintiff incorporates herein by reference all of the allegations in ¶ 1-19 above, specifically including the allegations in ¶ 8-11 above.

21.     Plaintiff is a Chinese-American.

22.     Title VII of the Civil Rights Act of 1964 as amended, prohibits discrimination by employer against employees on the basis of age, race and/or color.

23.     During Plaintiff's employment with Defendant, Plaintiff was a member of a class protected under Title VII against age, race and color discrimination by his employer or by their supervisory personnel.

24.     Defendant took adverse and spiteful actions against Plaintiff based on his age, race and color ,including but not limited to, verbal harassment concerning his age, race and color; abusive, offensive, and hostile behavior based on Plaintiff's age, race and color, and denial of equal pay for equal work.

25.     Plaintiff was therefore treated in a disparate manner and was subjected to Defendants' unfair policies and practices insofar as that he was treated in an unequal manner and unlike employees similarly situated with the Defendant, who were not white. Said unfair practices both limited Plaintiff in his commissions, wages, bonuses, and other benefits because of his age, race and color, and further resulted in his discharge from employment on 10/07/12.

26.     Defendant's adverse employment actions, and Plaintiff's assertions of his federally protected rights are causally connected.

27.     Defendants' actions and failures to act have directly and proximately caused Plaintiff substantial past and future economic loss, including lost wages, damage to his career, humiliation and pain and suffering, in an amount to be determined at trial.

28.     Defendants' intentional and discriminatory conduct toward Plaintiff in violation of Title VII was willful, wanton, deliberate, malicious, egregious, and outrageous warranting the imposition of injunctive relief, punitive/exemplary damages which will serve as an example and deterrent to Defendants, their employees, and others who would commit similar illegal and unlawful acts.

29.     Plaintiff is also entitled to an award of costs and attorney's fees, in accordance with Title VII.

## SECOND CLAIM FOR RELIEF
(Hostile Work Environment in Violation of Title VII)

30.     Plaintiff incorporates herein by reference all of the allegations in ¶ 1-29 above, specifically including the allegations in ¶ 10-19 above.

31.     Defendant's treatment of Plaintiff was unwelcome and constituted, among others, a pervasive pattern of blatant and offensive conduct and remarks about Plaintiff's age, race and color

32.     This type of treatment was so severe and pervasive that it altered the conditions of Plaintiff's employment and had an adverse impact on Plaintiff's working environment, health and pay.

33.     Defendant knew or should have known of the harassment and hostile environment perpetrated by management and lower level employees, and failed to take immediate and appropriate remedial action.

34.     Moreover, Defendant is vicariously liable for the hostile work environment created and maintained by its high level employees, including, but not limited to Handy, Lewis, Sanchez, Krotosky, Heaton and Lasalvia.

35.     Plaintiff has suffered and has damages such as lost compensation, benefits, and emotional harm.

36.     Defendants' unlawful conduct toward Plaintiff in violation of Title VII was done with reckless disregard for his federally protected rights, was willful, wanton, deliberate, malicious, egregious, and outrageous warranting the imposition of injunctive relief, punitive/exemplary damages and as such the Defendant should be subjected to punitive damages.

## THIRD CLAIM FOR RELIEF
### (Hostile Work Environment in Violation of §1981, as amended)

37.     Plaintiff incorporates herein by reference all of the allegations in ¶ 1-36 above, specifically including the allegations in ¶ 10-19 above.

38.     Plaintiff is a Chinese-American who has experienced a hostile work environment because of his age, race and color.

39.     Defendant's treatment of Plaintiff was unwelcome and including, but was not limited to, a pervasive pattern of blatant, spiteful and offensive conduct and remarks about Plaintiff's race, color, and religion.

40.     Moreover, Defendants are vicariously liable for the hostile work environment created and maintained by its high level employees, including, but not limited to including, but not limited to Handy, Lewis, Sanchez, Krotosky, Heaton and Lasalvia.

41.     Defendants' unlawful conduct toward Plaintiff in violation of Title VII was done with reckless disregard for his federally protected rights, was willful, wanton, deliberate, malicious, egregious, and outrageous warranting the imposition of injunctive relief, punitive/exemplary damages and as such the Defendant should be subjected to punitive damages.

## FOURTH CLAIM FOR RELIEF
(Negligence)

42.     Plaintiff incorporates herein by reference all of the allegations in ¶ 1-41 above, specifically including the allegations in ¶ 8-19 above.

43.     Defendant owed and continue to owe a duty of care to their employees, such as Plaintiff, to prevent their employees and high-level managers from acting in any way to harm co-employees.

44.     Defendant had a further duty to ensure that complaints of age, racial and/or color discrimination were properly handled and investigated and any investigation conducted in a fair, impartial and/or non-discriminatory manner.

45.     Defendant voluntarily contracted, promised and/or agreed and thereby assumed a legal duty to ensure that complaints of age, racial and/or color harassment and discrimination were properly handled and investigated and any investigation conducted in a fair, impartial and/or non-discriminatory manner, pursuant to its express employment policies.

46.     Defendant breached its duty of care owed to Mr. Dickson by and through the following acts and/or omissions, which include but are not limited to:

      (a)     Failing to properly and adequately train its managerial employees to properly respond to complaints of racial, color and/or religious discrimination and to prohibit such discrimination;

      (b)     Failing to carefully and diligently supervise its employees, to prevent them from improperly handling complaints of racial, color, and/or religious discrimination and/or conducting the investigation in a non-discriminatory manner;

      (c)     Failing to implement and/or take appropriate remedial action once it knew or should have known that its employees were mishandling complaints of racial, color, and/or religious discrimination and/or conducting the investigation in a discriminatory manner; and

      (d)     Failing to conduct a reasonable, proper and appropriate investigation;

      (e)     Failing to abide by its own express and implied employment policies and procedures; and

      (f)     Failing to exercise reasonable care under the circumstances.

47.    Defendant's conduct was a direct and proximate cause of the injuries, damages and harm suffered by Plaintiff.

48.    Because the Defendant's conduct toward Plaintiff was improperly motivated, and was intentional, willful and wanton, Plaintiff is entitled to punitive/exemplary damages in addition to compensatory damages.

## FIFTH CLAIM FOR RELIEF

(Intentional Infliction of Emotional Distress)

49.    Plaintiff incorporates herein by reference all of the allegations in ¶ 1-48 above, specifically including the allegations in ¶ 8-19 above.

50.    As set forth herein, during his employment with Defendant, Plaintiff was subjected to a pattern of discrimination and misconduct in the workplace based, in whole or in part, on his age,

race and/or color.

51.     Defendants' actions towards Plaintiff as set forth above are evidence of a pattern of age, race and/or color discrimination, which further constitutes extreme and outrageous conduct.

52.     Defendant's conduct was outrageous and spiteful in character and extreme in degree, because said conduct was atrocious and egregious, and went beyond all possible bounds of generally accepted

standards of decency and morality and is utterly intolerable in a civilized community. Defendant's conduct was intentionally meant to do harm and damage to Plaintiff, solely because of his age and/or because he was of Chinese ancestry.

53.     The extreme and outrageous conduct of the above-named Defendant towards Plaintiff was done in a willful and wanton manner, and constituted disregard for the rights and well being of Plaintiff.

54.     The racially motivated discriminatory conduct, as described above, was ongoing, repeated and intentional, and/or the Defendants knew or should have known that their actions caused severe emotional distress to Plaintiff.

55.     As a direct and proximate result of the above-named Defendants' extreme and outrageous conduct, Plaintiff suffered severe emotional distress.

## <u>SIXTH CLAIM FOR RELIEF</u>

(Negligent Infliction of Emotional Distress)

56.     Plaintiff incorporates herein by reference all of the allegations in ¶ 1-55 above, specifically including the allegations in ¶  8-19 and 51-55 above.

57.     In the event the finder of fact determines that the conduct alleged in the Fifth Claim for Relief (above), then he alleges that said conduct was negligent and asserts his claim based thereon, excluding however his claim for punitive damages.

## SEVENTH CLAIM FOR RELIEF

(Violation of Title VII's Prohibition Against disparate treatment - race)

58.     Plaintiff incorporates herein by reference all of the allegations in ¶ 1-57 above, specifically including the allegations in ¶ 12-14 above.

59.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq., and 42 U.S.C. Section 1981A, for relief based upon the unlawful employment practices of the above-named Defendant. Specifically, Mr. Dickson complains of Defendant violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race.

60.     During his employment with Defendant, Mr. Dickson was a member of a class protected under Title VII against race based discrimination by his employer, Defendant or by its supervisory personnel.

61.     As set forth herein, as a result of the racially hostile work environment and the pattern and practice of racial discrimination described above, Mr. Dickson was denied equal pay for equal work and was wrongfully denied equal opportunity for promotion and advancement.

62.     Mr. Dickson as a Chinese-American employee of Defendant, was treated in a disparate manner and was subjected to Defendant's unfair policies and practices insofar as that he was treated in an unequal manner and unlike employees similarly situated with the Defendant who were white. Said unfair practices both limited Plaintiff in his wages and other benefits because of his race and national origin and further resulted in his discharge from employment on 10/07/12.

## EIGHTH CLAIM FOR RELIEF

(Breach of contract & of implied covenant of good faith and fair dealing)

63.     Plaintiff incorporates herein by reference all of the allegations in ¶ 1-62 above, specifically

including the allegations in ¶ 8-19 and 51-55 above.

64. Mr. Dickson had a contract of employment with Defendant Bluehost. Such contract was not a formal, written, integrated document, but consisted of various writings, policies, procedures, mutual understandings, practices and courses of dealing.

65. Such contract of employment, including the employee handbook, may have contained a term specifying that Mr. Dickson employment was "at will," but it also contained an express or implied term which obligated her to report what she in good faith believed to constitute actions which were against the law and/or which violated company policies.

66. Such contract of employment also had implied in it covenants of good faith and fair dealing by which both parties impliedly agreed not to act in such a way as to deprive the other from being able to perform their obligations under the contract and enjoy the fruits of the contract.

67. In reporting what he, in good faith, believed were actions which were against the law and/or which violated company policies, Mr. Dickson acted in accordance with this contract of employment with Defendant.

68. In responding to Mr. Dickson's reports of what appeared to him to be violations of law and/or company policies, Defendant did not act in accordance with the contract of employment or in good faith or to deal fairly with Ms. Dickson. Instead, Defendant abruptly terminated his employment for reasons which were false and pretextual. Defendant's actions constitute a breach of such contract and breach of the covenant of good faith and fair dealing.

69. Such breaches have caused each Plaintiff harms, losses, injuries and other damages.

70. To redress such breaches, Mr. Dickson has been required to hire an attorney and incur attorney's fees and costs.

71.     Because of such breaches, Plaintiff seeks to hold Defendant liable for damages for lost wages and benefits, emotional distress, mental anguish, reasonable attorney's fees, reasonable expert witness fees and any other costs of this action, and for such other and further legal and/or equitable relief as this Court deems appropriate.

## NINTH CLAIM FOR RELIEF

### (Wrongful termination - retaliation for whistle blowing)

72.     Plaintiff incorporates herein by reference all of the allegations in ¶ 1-71 above, specifically including the allegations in ¶ 8-19 and 51-55 above.

73.     The United States and the State of Utah have clear and substantial public policies that employers are to comply with all federal and state laws regulating their particular type of business, to honor promises and commitments and promises made to employees upon which those employees have relied and to not retaliate against or punish employees who have sought to make good faith inquiries and reports under laws, regulations, rules and policies designed to foster compliance with the law and protect the public and/or to protect employees.

74.     The sources of such clear and substantial public policies are multiple, including federal and state statutes on reporting suspected violations of law and suspicious activity, and employee safety and health.

75.     By engaging in the actions set forth above, Mr. Dickson brought such clear and substantial public policies into play.  His actions were consistent with such clear and substantial public

policies and were in furtherance of the objectives such clear and substantial public policies are designed to achieve.

76.     Despite Mr. Dickson engaging in actions encouraged and mandated by important clear and substantial public policies and because of his involvement in such protected activity,  Defendant took materially adverse actions against Mr. Dickson, including, but not limited to abruptly terminating Mr. Dickson's employment.

77.     Such adverse actions were contrary to and in violation of such clear and substantial public policies and constitute a wrongful termination.

78.     Defendant's reasons for terminating Mr. Dickson's employment are false, did not justify the termination and are pretextual.

79.     Mr. Dickson makes this allegation of pretext for a retaliatory termination based on several facts, including, but not limited to:

(a)     while employed with Defendant, Mr. Dickson had developed a good work record with Defendant.  Mr. Dickson had performed his work duties for Defendant well above the level required by Defendant to remain employed.  He had been regular in attendance, punctual, followed Defendant's policies and procedures, worked hard, and was a team player.  He had been an honest, reliable, knowledgeable, productive employee.  He had received positive feedback, good performance evaluations, and customer service plaudits.  There was no performance-based reason to terminate his employment;

(b)      there is a relatively close temporal proximity between Mr. Dickson's report of actions by a co-worker which he viewed as acting contrary to the Defendant's policies, and Defendant's subsequent adverse actions towards him, including Defendant's efforts to search for reasons to justify terminating him;

(c)      the minor things for which Defendant terminated Dickson do not justify the termination of an employee of 5 years;

(d)      the reason(s) for the termination are factually inaccurate; among other things Bluehost's management was aware of Dickson's activities re GatorHost not less than 6 months before Dickson was terminated, but they did not object thereto. Instead, during that period Dickson received a substantial pay raise and a promotion.  Dickson discussed his activities with Heaton, a major owner of Bluehost.  The Bluehost CEO Handy was also aware of Dickson's activities with GaterHost. Several other Bluehost employees had similar outside business activities, yet Dickson (who had no financial interest in GatorHost) was the only person involved in other business organizations who was disciplined by Bluehost.  These circumstances create a strong inference that Dickson's activities with GatorHost was a pretext and was not the real reason for his discharge.

(e)      sometime after Mr. Dickson was terminated, he learned from an employee of Defendant that Lewis had stated the reason for Dickson's termination was because he had complained about racial discrimination in granting promotions.

> (f)     on information and belief, the company treated Mr. Dickson much differently before he blew the whistle than it did after he blew the whistle;

80.    Mr. Dickson asserts that it is more likely than not that Defendant's actions were motivated by a retaliatory reason.  Such wrongful termination has caused Mr. Dickson harm, injury, loss and damages of various types, including lost wages and benefits, emotional distress, mental anguish, and other losses, injuries and damages.

81.    To redress such violations, Mr. Dickson has been required to hire an attorney and incur attorney's fees and costs

82.    Because of such wrongful actions, Plaintiff seeks to hold Defendant liable for damages for lost wages and benefits, emotional distress, mental anguish, reasonable attorney's fees, reasonable expert witness fees and any other costs of this action, and for such other and further legal and/or equitable relief as this Court deems appropriate.

83.    Mr. Dickson alleges such wrongful actions and termination were planned, deliberate, intentional, wilful, and motivated by a desire to flout the laws regulating the workplace and to deny Mr. Dickson the protections and benefits of such laws, thus justifying an award of punitive damages.

## DAMAGES

84.    The conduct of the Defendant, as set forth herein, violated Mr. Dickson's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section

1981; the statutes described in ¶ 4 above and elsewhere herein and/or the common law of Utah,

caused injuries, damages and harm to Mr. Dickson, including, but not limited to, past and future

economic loss, past and future non-economic losses, including extreme emotional distress, loss of

reputation, shame, humiliation, pain and suffering, inconvenience, mental anguish, impairment in

the quality of life; and consequential losses, for which he is entitled to recover damages and/or other

relief.

## ADDITIONAL PARTIES AND/OR CLAIMS

85.     Mr. Dickson respectfully requests leave to amend his Complaint to add additional parties

and/or claims upon completing initial discovery. It may be necessary to name agents or

employees of the above-named Defendant, and to add additional claims against them such as

intentional discrimination based on race pursuant to Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. Section 2000e et seq., and 42 U.S.C. Section 1981; if additional

investigation and discovery elicits information that supports such claims.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Dickson prays for judgment against the Defendant Bluehost
for the following relief:

86.     For declaratory relief as follows:

(a)     A declaratory judgment that Defendants have violated Mr. Dickson's right to be

        free from discrimination in the workplace pursuant to the Title VII of the Civil

        Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq.; the Civil

Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981; 42 U.S.C. Section 1981A;

(b)     Declaring and finding that Defendant created/allowed a hostile work environment for Dickson and discriminated against him on the basis of his race, color and national origin, in violation of Title VII.

( c)     For an injunction and/or judgment ordering Defendant to make Plaintiff whole with consequential full back pay, benefits, reinstatement to a position Mr. Dickson  would have obtained in the absence of discrimination or, in the alternative, front pay in lieu of reinstatement of not less than $150,000.

(d)     Declaring and finding that Defendant discriminated against Dickson by paying him at a lower rate than other employees doing similar work, that said difference in compensation was part of Defendant's practice of paying non-white about $10,000 less per year than it paid to white persons, on the basis of Dickson's race, color and/or national origin, in violation of Title VII, et seq.

(e)     Declaring and finding that Defendant discriminated against Dickson on the basis of his age, in violation of the ADEA.

(f)     For such other declaratory relief as the Court deems proper.

87.     A judgment in favor of Mr. Dickson and against Defendant for general, compensatory and consequential damages in amount to be shown at trial for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life; and consequential loses;

88.     An award to Dickson of for reasonable attorneys' fees and costs, including but not limited

to expert witness fees, as provided in Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. Section 2000e-5(k), 42 U.S.C. Section 1981A, 42 U.S.C Section 1988 and as provided

under state law;

89.     An award to Mr. Dickson of interest on any awards at the highest rate allowed by law;

90.     For injunctive and/or declaratory relief.

91.     For such other and further relief as this Court deems just and appropriate.


**PLAINTIFF REQUESTS JURY TRIAL ON ALL JURY ISSUES**

Dated May 5, 2014.                    BARKER LAW OFFICE, LLC

                            By:     /s/Ronald C. Barker
                                    Ronald C Barker